MASONIC TEMPLE ASSOCIATION OF GRAND RAPIDS *v.* MICHIGAN FIRE & MARINE INSURANCE COMPANY.

1. PLEADING—INCONSISTENT COUNTS.
   A plaintiff may include inconsistent causes of action in the same declaration (Court Rule No. 17, § 6 [1945]).

2. INSURANCE—FIRE INSURANCE—COINSURANCE CLAUSE—STATUTES.
   A coinsurance clause in a fire insurance policy must be in the form prescribed by statute and must be applied for in writing (3 Comp. Laws 1929, § 12575, as amended by Act No. 53, Pub. Acts. 1943).

3. CONTRACTS—PUBLIC POLICY—RATIFICATION.
   One cannot legalize a contract that is prohibited under criminal penalty or as a matter of public policy.

REFERENCES FOR POINTS IN HEADNOTES
[1] 41 Am. Jur., Pleading, §§ 47, 48.
[3] 12 Am. Jur., Contracts, § 222.
[4] 29 Am. Jur., Insurance, § 1181.
[5] 29 Am. Jur., Insurance, §§ 174, 175.
[5] Unsigned riders or slips physically attached to policy, or unsigned indorsements on policy, as part of insurance contract. 128 A.L.R. 1034.

4. INSURANCE—COINSURANCE—PUBLIC POLICY—RATIFICATION.

A coinsurance clause in a fire insurance policy is not invalid as against public policy but has been legalized by statute, hence its inclusion in a policy may be ratified (3 Comp. Laws 1929, § 12575, as amended by Act No. 53, Pub. Acts 1943).

5. SAME—COINSURANCE—APPRAISAL.

Upon attachment of a coinsurance clause rider to a fire insurance policy it becomes subject to the terms of the policy which govern its application, including provision as to appraisal (3 Comp. Laws 1929, § 12575, as amended by Act No. 53, Pub. Acts 1943; Act No. 256, pt. 4, chap. 2, § 6a, Pub. Acts 1917, as amended by Act No. 265, Pub. Acts 1945).

6. SAME—MOTION TO DISMISS—APPRAISAL—WAIVER.

In action on fire insurance policy after fire loss, where plaintiff insured claimed that insurer had waived requirement as to appraisal and no specific finding was made by trial judge as to whether there was such a waiver at the hearing on the motion to dismiss, an order for appraisal is made without prejudice to rights of insured and at its option, the same as if it were an interlocutory order to which plaintiff has taken an exception (Act No. 256, pt. 4, chap. 2, § 6a, Pub. Acts 1917, as amended by Act No. 265, Pub. Acts 1945).

Appeal from Kent; Simpson (John), J., presiding. Submitted January 5, 1949. (Docket No. 16, Calendar No. 44,189.) Decided February 28, 1949.

Assumpsit by Masonic Temple Association of Grand Rapids, a Michigan corporation, against Michigan Fire & Marine Insurance Company, a Michigan corporation, on a fire insurance binder and fire insurance policy. From order entered on motion to strike and dismiss, plaintiff appeals. Modified and remanded for further proceedings.

*Searl, White & Brooks,* for plaintiff.

*Smith & Smith* (*Laurence D. Smith* and *Cashan P. Head,* of counsel), for defendant.

BUTZEL, J.   On May 19, 1947, the Michigan Fire & Marine Insurance Company, a Michigan corporation, defendant and appellee, issued its binder for fire insurance, in the amount of $100,000, to the Masonic Temple Association of Grand Rapids, Michigan, a Michigan corporation, plaintiff and appellant.   This was part of the insurance plaintiff carried on its seven-story brick and stone building in the city of Grand Rapids.   The record does not show the negotiations that preceded the issuing of the insurance, or that followed up to the time the policy provided for in this binder was delivered.   On the binder issued by defendant, dated May 19, 1947, the spaces for the "Rate" and "Coins" (evidently coinsurance) were not filled in.   The binder was to remain effective until the issuance of a standard insurance policy "in place hereof, subject to all the terms and conditions of said policy which are hereby made a part hereof to the same extent as if fully set forth herein."

A disastrous fire occurred on May 30, 1947.   At that time or almost immediately thereafter, such standard insurance policy was delivered by defendant to plaintiff, which evidently received it without any objection whatsoever and paid the reduced premium called for.   The policy is dated May 20, 1947, the day following the date of the binder.   There was attached to the policy a coinsurance rider that included a written application, as provided by statute, signed by plaintiff.   Plaintiff agreed therein that in consideration of a reduced premium rate it would carry insurance to the extent of 90 per cent. of the actual cash value of the building.   The coinsurance clause was strictly in accord with 3 Comp. Laws 1929, § 12575, as amended by Act No. 53, Pub. Acts 1943*

---

* 3 Comp. Laws 1948, § 532.9.—REPORTER.

(Comp. Laws Supp. 1945, § 12575, Stat. Ann. 1947 Cum. Supp. § 24.425).  It stated:

"It is understood by the undersigned that the effect of the above-mentioned coinsurance clause, when attached, will be to reduce the liability of the insurance company,"

unless the property covered by the policy is insured for 90 per cent. of its actual value, "except where the loss exceeds the amount of the insurance required under this clause."  While the policy is not fully set forth in the record, the parties virtually concede in the pleadings and briefs the issuance of the standard policy provided for by statute.  The coinsurance rider is set forth in the pleadings.  Over 7 months after the fire loss, plaintiff in its pleadings offered to pay to defendant the difference between the premium rate it paid and what would have been the rate had there been no coinsurance clause.

Following the fire the plaintiff and defendant, through its representative, the Western Adjustment & Inspection Company, negotiated as to the amount of loss and the liability of the defendant.  Defendant paid $5,000 on account of the loss, which it claims was paid on the policy and that it refused to pay any more until its liability under the coinsurance clause was determined by a proper ascertainment of the actual cash value of the building at the time of the fire.  On October 9, 1947, the parties agreed that the amount of the loss to the building was $474,187.78 but at no time has there been an agreement as to the actual cash value of the building by the parties or appraisers.  What negotiations, if any, followed October 9, 1947, is not shown by the record.  On January 26, 1948, plaintiff began suit to recover 10 per cent., defendant's share, of the total loss of $474,187.78, less the $5,000 paid, and also interest and damages it claims it suffered through rise in construction

costs. Plaintiff claims that the delay in payment of the insurance prevented it from making the necessary repairs, et cetera. Plaintiff carried $1,000,000 of insurance of which the $100,000 issued by the defendant represented 10 per cent. of the total insurance carried.

Plaintiff availed itself of the right to declare on inconsistent counts:* The first on the binder and the second on the policy to which the coinsurance rider was attached. In its declaration plaintiff merely alleged the issuing of the insurance, the payment of the premium, the fire and the loss, and the claim against the defendant. Defendant in its answer denied many of the allegations of the plaintiff, and insisted that the plaintiff did not have any rights under the binder, which defendant asserts was superseded by the policy. Defendant also contended that plaintiff had failed to furnish proofs of loss showing the actual cash value of the building at the time of the fire, and that plaintiff's suit on the policy, as set forth in the second count, was premature, in that the policy provides:

"Within 60 days after the loss unless such time is extended in writing by this company, the insured shall render to this company a proof of loss signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: The time and origin of the loss; the interest of the insured and all others in the property; the actual cash value of each item thereof, and the amount of loss and to all encumbrances thereon; all other contracts of insurance, whether valid or not, covering any of said property, et cetera."

"Appraisal. In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested ap-

---

* See Court Rule No. 17, § 6 (1945).—Reporter.

praiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of the insured or this company, such umpire shall be selected by a judge of a court of record in the State in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally."

Further, that it had served on plaintiff a written demand for an appraisal in accordance with the policy, and within 20 days thereafter had named an appraiser, but that plaintiff had refused to appoint an appraiser or enter into an appraisal. The standard form policy further provides:

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with."

The demand for appraisal was made on January 26, 1948, the day suit was begun by summons. Plaintiff claims the suit was begun first, defendant denies this. The question, however, is unimportant.

Defendant filed a motion to dismiss, with its answer, on the grounds set forth in the answer, and principally because plaintiff had not complied with all the requirements of the policy hereinbefore quoted. After the motion was made but prior to the hearing thereon, plaintiff filed a reply to defendant's answer. It denied many of the affirmative allegations of the defendant's answer and asserted that

proofs of loss were filed in accordance with the demands of the defendant's representative, that such proofs of loss were prepared by reputable appraisers (the proofs of loss are not in the record) ; that it carried one million dollars worth of insurance, which it claimed was more than the 90 per cent. of the actual cash value of the building at the time of the fire, that during the month prior to the fire loss the building was appraised by a reputable and experienced insurance appraiser who determined the actual cash value to be $1,043,440, 90 per cent. of which is $939,-096, so that the $1,000,000 of insurance carried by plaintiff was $60,904 in excess of the required 90 per cent. of the actual cash value of the property; also that this appraisal was given to the defendant. The defendant denies it ever agreed to such appraisal and insists that the proofs of loss were defective and incomplete in not showing the actual cash value.

In its reply plaintiff further asserted that the question of the actual cash value of the building was an afterthought by the defendant which raised it for the first time on October 9, 1947, after the parties had agreed to the amount of the loss, that the demand for appraisal was not made until after the suit was started, and that by its conduct and delay the defendant had waived its rights to an appraisal, if it had any such rights. The plaintiff denies defendant had any such right and claims that even if the policy superseded the binder, the appraisal clause does not apply to the conditions of the coinsurance clause. Defendant claims the demand for an appraisal was definitely made on October 9, 1947, and was the subject of discussions between the parties until the suit was begun. There is nothing in the record as to these discussions or negotiations, but evidently if there were any, they had reached a stalemate at the time of the suit.

The trial judge rendered an opinion on the motion to dismiss, in which he virtually held that the policy superseded the binder and that plaintiff was bound by the terms of the policy providing for an appraisal of the actual cash value. He did not foreclose plaintiff from producing further evidence at the trial itself to show what actually took place between the parties and he thus left the question open. He held that it was incumbent on the plaintiff to proceed with an appraisal, and that under the provisions of the standard policy, it was a condition precedent to recovery. The judge stated in his opinion that if an appraisal were promptly made it would probably result in an adjustment of all the differences between the parties. If not, it would at least present all the issues in one case, and thus prevent any further litigation.

The order entered on this opinion provided as follows: As to the first ground, that plaintiff had failed to file proofs of loss, the motion was denied, without prejudice, such ground to be heard and considered at the time of the trial; as to the second ground, that the cause of action had not arisen at the time of the commencement of the suit as plaintiff had failed to comply with the terms of the policy as to appraisal, the motion was granted and the suit would be dismissed unless within 20 days from the date of the order the plaintiff appointed an appraiser in accordance with the terms of the policy and Act No. 256, pt. 4, chap. 2, §§ 6a, 7a, Pub. Acts 1917, as added by Act No. 265, Pub. Acts 1945* (Comp. Laws Supp. 1945, §§ 12572–1, 12573–1, Stat. Ann. 1947 Cum. Supp. §§ 24.422[1], 24.423[1] ); in that event the suit was to be stayed until the completion of the appraisal; as to the third ground, that the first count of the declaration on the binder be stricken, the motion was denied

* 3 Comp. Laws 1948, §§ 532.6a, 532.7a.—REPORTER.

without prejudice, the question to be heard and considered at the trial; as to the fourth ground, that the claims for interest and damages should be stricken, as not recoverable under the policy, it was denied without prejudice, such question to be heard and considered at the time of the trial. The plaintiff refused to appoint an appraiser and appealed from the order of dismissal. The defendant has not cross-appealed.

As the case was disposed of on a motion to dismiss, the record is in a most unsatisfactory state. The order of the trial court is inconsistent. It squarely holds that the suit be dismissed unless plaintiff complies with the terms of the policy as to an appraisal. This indicates that the binder was superseded by the policy, but then, as to the third ground for dismissal, it leaves the question open in the order. While the present record most strongly indicates that the policy superseded the binder, the question need not be finally decided on this appeal.

Plaintiff contends that the binder was the complete contract at the time of the fire. The binder did refer to the policy to be issued. It is claimed that even if there was an agreement for a coinsurance clause, it was not included in the binder, because it would have been illegal and void. A coinsurance clause must be in the form prescribed by statute. It could not be included in the binder except in an instrument much longer than the binder itself. It is claimed that it could not be effective even if it had been referred to in the binder as such coinsurance clause must be applied for in writing. Plaintiff claims that even if such clause had been agreed on at the time of the binder and it is held that the binder was superseded by the policy when issued, any such agreement would have been illegal unless in the form prescribed by statute, and thus being illegal and void it could not be subsequently ratified. It is true that one cannot legalize a contract that is prohibited un-

der criminal penalty or as a matter of public policy. *Turner* v. *Schmidt Brewing Co.*, 278 Mich. 464. Such is not the present case. Plaintiff contends that coinsurance has been held invalid in many States and that it was not permitted in Michigan from 1895 until 1907, when Act No. 307, Pub. Acts 1907, legalizing a provision for coinsurance was enacted. It was superseded by 3 Comp. Laws 1929, § 12575, which was amended by Act No. 145, Pub. Acts 1941 and Act No. 53, Pub. Acts. 1943 * (Comp. Laws Supp. 1945, § 12575, Stat. Ann. 1943 Rev. § 24.425). We dismiss plaintiff's claim that there is something vicious about coinsurance. Its legality is no longer a debatable question. It has been authorized by law for over 40 years, and so could be subsequently ratified by compliance with the statute. *Fine Arts Corp.* v. *Kuchins Furniture Manufacturing Co.*, 269 Mich. 277.

Plaintiff stresses the claim that coinsurance is not provided for in the standard form of policy, and that the provisions as to appraisal cannot apply to any agreement extraneous to the provisions of the policy. Plaintiff in its brief sets forth the history of the standard policy, going back to Act No. 277, Pub. Acts 1905 (subsequently repealed), where in the appraisal clause it was provided that the appraisers shall estimate and appraise the loss, stating separately sound value and damage. Obviously this could not have referred to appraisal of the cash value under a coinsurance clause, that was not authorized by law in 1905. The latest revision was Act No. 256, pt. 4, chap. 2, § 6a, Pub. Acts 1917, as added by Act No. 265, Pub. Acts 1945 † (Comp. Laws Supp. 1945, § 12572–1, Stat. Ann. 1947 Cum. Supp. § 24.422 [1]). It provides for an appraisal on the written demand of either the insured or the insurer, if they

---

* 3 Comp. Laws 1948, § 532.9.—REPORTER.
† 3 Comp. Laws 1948, § 532.6a.—REPORTER.

"fail to agree as to the *actual cash value* or the amount of the loss." The appraisers in appraising the loss, must state "separately *actual cash value.*" The award shall determine the *actual cash value.* This has not been determined by any agreement or appraisal, and the insurer pertinently asks how it can determine what amount it should pay under the coinsurance clause until the actual cash value has been determined. The standard policy refers to "the contribution to be made by this company in case of loss." Although the coinsurance clause is not included in the form of the standard policy, it is provided for by statute, which provides that it shall be attached to the policy. It thus becomes subject to the terms of the policy, which govern its application. Numerous riders are frequently attached to the policy, and become subject to its terms.

It does not appear that proof of loss showing the actual cash value of the building was ever given to the defendant. Plaintiff disputes this claim but does not assert that it ever filed proof of loss showing the actual cash value of the property. There is no doubt that there never has been an agreement or an appraisal approved of by defendant to determine the actual cash value. Plaintiff claims, however, that defendant, by its conduct, waived an appraisal. It would seem from the briefs and the present record that notwithstanding plaintiff's claim to the contrary, there has never been a waiver. However, we cannot determine this question at the present time. The judge seemed to agree with the defendant's position when he ordered the appraisal, but at the same time he made no specific finding as to whether there had been a waiver. Defendant has asked for an appraisal of the actual cash value of the property and has named the appraiser. Plaintiff evidently has declined to name an appraiser. Defendant relies on the case of *Chippewa Lumber Co.* v. *Phenix Ins. Co.,*

80 Mich. 116, which states that either party could have asked for an appraisal of the cash value and the silence by one party does not excuse the silence by the other.  We are very impressed by it but refrain from discussing it or other cases cited, as the question of waiver is still open and may be supplemented by further testimony at the trial.

Summing up the case, we find that while the judge was seemingly inclined towards upholding defendant's contentions, nevertheless, he left open the questions as to whether the policy superseded the binder, and whether there was a waiver of an appraisal to ascertain the cash value of the property.  The standard policy provides that no suit shall be sustainable on the policy, unless commenced within 12 months of the inception of the loss.  The judge apparently was trying to preserve the parties' rights when he held that if plaintiff appointed an appraiser within 20 days the suit shall be stayed, until the completion of the appraisal.  The judge may have been apprehensive of the fact that if the suit continued without the appraisal and defendant should prevail, defendant might claim that plaintiff was without any remedy whatsoever if it began a new suit over a year after the inception of the loss.  The judge also expressed his opinion that if there was an appraisal the parties might adjust their differences and thus end the litigation.  Defendant does not ask for dismissal of the suit and agrees that it is proper to stay it a reasonable length of time until an appraisal is made.  As this is a suit at law, the order for an appraisal may be considered the same as if it were an interlocutory order to which plaintiff has taken an exception and it may safely proceed to an appraisal without prejudice to the other claims it makes.  Defendant seems satisfied with the order in which the question of whether the policy superseded the binder and the many other questions that were left open so that fur-

ther facts could be developed. While plaintiff is not obliged to submit to an appraisal, it proceeds at its peril without one for if it should eventually be decided that the policy superseded the binder and that plaintiff could not sue until an appraisal of the cash value has been made, it might be confronted with more serious questions than at present.

The case should be remanded to the trial court to modify its order so as to give plaintiff 20 additional days after date of such order in which to appoint an appraiser and such appointment and appraisal of the cash value shall be without prejudice to the plaintiff's claim that the binder was still in effect or whether an appraisal had been waived by defendant's actions. The order shall further provide that in case plaintiff names an appraiser suit shall be stayed a sufficient length of time until the appraisal is made; that if plaintiff shall not appoint an appraiser suit may proceed as to the questions of fact that were raised by the pleadings and were left open for further testimony and a proper disposition of the case. Costs on this appeal shall abide the eventual outcome of the case.

Sharpe, C. J., and Bushnell, Boyles, Reid, North, Dethmers, and Carr, JJ., concurred.